JAMES HOCHBERG (HI Bar No. 3686)
ATTORNEY AT LAW, LLLC
700 Bishop St., Ste. 2100, Honolulu, HI 96813
Telephone: (808) 256-7382
E-mail: jim@jameshochberglaw.com

Noel H. Johnson* (Wisconsin Bar #1068004)
Maureen Riordan* (New York Bar #2058840)
Joseph M. Nixon* (Texas Bar #15244800)
Public Interest Legal Foundation, Inc.
107 S. West Street, Suite 700
Alexandria, Virginia 22314
Tel: (703) 745-5870
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
kphillips@PublicInterestLegal.org
jnixon@publicinterestlegal.org
*Motion for admission pro hac vice forthcoming

Attorneys for Plaintiff Public Interest Legal Foundation

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.** | Case No. |
| *Plaintiff,* | **PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| *v.* | |
| **SCOTT T. NAGO,** in his official capacity as the Chief Election Officer for the State of Hawaii | |
| *Defendant.* | |

Plaintiff Public Interest Legal Foundation (the "Foundation"), by its

attorneys, brings this action for violations of Section 8 of the National Voter

1

Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §

1331, because the action arises under the laws of the United States. This Court also

has jurisdiction under 52 U.S.C. § 20510(b), because the action seeks injunctive

and declaratory relief under the NVRA. This Court may also grant declaratory

relief under 28 U.S.C. § 2201.

2.      Venue in this Court is proper under 28 U.S.C. § 1391(b)(1), because

the Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2), because a

substantial part of the events or omissions giving rise to the claim occurred in this

district.

## PARTIES

3.      The Public Interest Legal Foundation, Inc., (the "Foundation") is a

non-partisan, public interest organization incorporated and based in Alexandria,

Virgina. The Foundation seeks to promote the integrity of elections nationwide

through research, education, remedial programs, and litigation. The Foundation

regularly utilizes the NVRA's Public Disclosure Provision and state and federal

open records laws that require government records be made available to the public.

Using records and data compiled through these open records laws, the Foundation

analyzes the programs and activities of state and local election officials in order to

determine whether lawful efforts are being made to keep voter rolls current and accurate. The Foundation also uses records and data to produce and disseminate reports, articles, blog and social media posts, and newsletters to advance the public education aspect of its organizational mission.

4. Defendant Scott T. Nago is the Chief Election Officer ("Mr. Nago") for the State of Hawaii. Mr. Nago is Hawaii's chief election official and "the coordinator of state responsibilities under the National Voter Registration Act of 1993." 21-A M.R.S. § 180.

5. Mr. Nago is sued in his official capacity only.

## BACKGROUND

*Hawaii Law*

6. Hawaii Revised Statutes ("HRS") sections 11-11, 11-14, 11-17 and 11-97 govern access to data from Hawaii's electronic voter registration system (the "VRS").

7. HRS section 11-11 provides that the county clerks are responsible for voter registration in their respective counties. Section 11-11 reads: **A person who registers as required by law shall be entitled to vote at any election provided that person shall have attained the age of eighteen at the time of the election. The county clerk shall be responsible for voter registration in the respective**

**counties and the keeping of the general register and precinct lists within the county.**

8.      HRS section 11-14 restricts the use of VRS data to election or government purposes. In pertinent part, the statute reads "**The general county register shall be available for election or government purposes only in accordance with section 11-97."** HRS 11-14(a). Subsection (d) goes on to state: "**Unless authorized under section 11-97, it shall be unlawful for any person to use, print, publish, or distribute any voter registration information acquired directly or indirectly from the voter registration affidavits or any list prepared therefrom."** HRS 11-14(d).

9.      HRS section 11-97 provides additional restrictions on VRS data. HRS section 11-97(a) reads: **A voter's full name, district/precinct designation, and voter status shall be public; but all other personal information, as provided on the voter registration affidavit, shall be confidential except for election or government purposes in accordance with rules adopted by the chief election officer, pursuant to chapter 91."** HRS 11-97 (d).

10.      Hawaii's Chief Election Officer adopted Hawaii Administrative Rule ("HAR") section 3-177-160, which limits the use of VRS data to a narrowly defined list of election or government purposes. "Election and government purposes" are defined in subsection (e), which reads: **The following constitutes a**

4

**non-exhaustive list of election or government purposes, unless otherwise**

**provided by law:**

> **1. To support or oppose any candidate or incumbent for partisan or nonpartisan office;**
>
> **2. To support or oppose any proposed or existing ballot measure, proposition, or issue;**
>
> **3. To support or encourage voter registration or voting process;**
>
> **4. To authorize government officials who, by the nature of their official responsibilities, must have access to the voter registration information of legitimate government purposes within the scope of their official duties;**
>
> **5. To challenge the right of any person to vote or to seek public office;**
>
> **6. To satisfy the requirements of HRS section 11-62 or HRS section 11-113;**

11.   The Rule goes on to require a request for VRS data that is not public under subsection (b) shall be in a sworn certification setting forth the election or government purpose for which the information is sought and a statement that the information will only be used for election or government purposes. HAR section 3-177-160(g).

12.   A request for VRS data must be made at the county, not state, level. Each county has its own form, but each county's form includes this admonition: **"Under penalty of law the voter registration data shall be used only for**

election or government purposes and not for any other purpose unless specifically authorized by law."

13.     The counties' forms also contain a stern warning: **"WARNING: PURSUANT TO CHAPTER 19 OF THE HAWAII REVISED STATUTES, ANY PERSON KNOWINGLY PROVIDING FALSE INFORMATION MAY BE GUILTY OF A CLASS C FELONY, PUNISHABLE BY UP TO 5 YEARS INPRISONMENT AND/OR A $10,000 FINE."**

*The NVRA's Public Disclosure Provision*

14.     The NVRA provides, in relevant part, "Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").

15.     The Public Disclosure Provision "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334-35 (4th Cir. 2012).

16.     The Public Disclosure Provision is designed to "ensure that election officials are fulfilling their list maintenance duties" and is "available to any member of the public." *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at \*12 (S.D. Fla. Mar. 30, 2018). The Public Disclosure Provision "convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs. Accordingly, election officials must provide full public access to all records related to their list maintenance activities, including their voter rolls." *Id*. at \*12-13.

### *Defendant is Denying the Foundation Access to Hawaii's Voter Registration Lists*

17.     On April 6, 2023, the Foundation emailed a letter to Mr. Nago requesting an opportunity to inspect or receive a copy of Hawaii's complete VRS data containing all data fields ("Voter File") pursuant to the NVRA's Public Disclosure Provision. A true and correct copy of the letter is attached as Exhibit A.

18.     On May 8, 2023, Jamie Kataoka of Voter Services responded to the Foundation's request, stating, "Thank you for your email. For a list of registered voters, please contact the County Elections Divisions. Any further related questions may be directed to the County Elections Divisions."

19.     On May 8, 2023, after the Foundation received the email from Ms. Kataoka, it responded, "Thank you for your response. To clarify, are County

Elections Divisions the only ones with access to the official lists of registrants – or does your office also maintain a master file comprised of all county lists?"

20.    Ms. Kataoka did not answer the question. Instead, on May 8, 2023, she wrote, "Thank you for your email. As noted in our prior email, for a list of registered voters, please contact the County Elections Divisions. Likewise, any related questions may be directed to the County Elections Divisions." A true and correct copy of the email correspondence is attached as Exhibit B.

21.    On May 17, 2023, the Foundation wrote a letter to Mr. Nago setting forth the background requests and the formal pre-litigation notice and request to cure the failure to follow the NVRA. A true and correct copy of the letter is attached as Exhibit C. The letter set out the NVRA violations of Hawaii's failure to maintain and provide access to VRS data and to provide access to all data which should be publicly available in a VRS file under the NVRA. Further, the letter explained that the Foundation is a 501(c)(3), non-profit organization and, as such, may not engage in candidate election related activities. As such, Hawaii laws and regulations do not allow the Foundation an exception under the definition of election or government purposes.

22.    On June 28, 2023, The State of Hawaii Office of Elections sent the Foundation a detailed letter signed by Aaron H. Schulaner, its General

8

Counsel, a true and correct copy of which is attached as Exhibit D. On behalf of the Defendant, the General Counsel confessed and admitted to an NVRA violation when he wrote: "**In our state, the duties of the registrar are handled by the four county clerks, and this would naturally include requests under state law, such as HRS § 11-97, and separately federal law, such as 52 USC §§ 20507(i)."** The letter continues, **"The Chief Election Officer is not a registrar and does not have a 'registrar's jurisdiction' that encompasses the whole state."** The General Counsel concludes the admission of liability with this statement, "**Consistent with the above, without getting into the merits of your request, you were properly referred to the county clerks to address your request. Specifically, the county clerks would appear to be able to address whether your request for what you refer to as a voter file was in fact for a 'record[ ] concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voter' under 52 USC § 20507(i), unless they determined it could be granted under HRS § 11-97."**

23.     On August 22, 2023, the Foundation responded to the General Counsel by writing again to Mr. Nago. A true and correct copy of that letter is attached as Exhibit E. The Foundation stated clearly that the NVRA does

not allow the Hawaii Office of Elections to delegate its federal responsibilities to the County Clerks.

24.     The Foundation reiterated a second NVRA violation in that Hawaii's statutes and administrative rules do not include the Foundation's federally authorized intended purpose as a legally permissible use. The Foundation explained that while HAR section 3-177-160 does set out a "non-exhaustive" list, the Foundation may not presume it has an acceptable purpose under Hawaii law. A violation of the county VRS application is a potential Class C Felony, punishable by up to 5 years in prison and/or a $10,000 fine.

25.     In response to the Foundation's August 22, 2023, letter, the General Counsel wrote on September 1, 2023, "**As previously noted, we refer you to the county clerks."** A true and correct copy of that letter is attached as Exhibit F.

26.     During the week of August 14, 2023, the Foundation sent its representatives to the Counties of Hawaii, Kauai, and Honolulu to personally request a copy of each county's VRS data. (Because of the fire disaster on Maui and the related emergency declaration, the Foundation did not present a request to the County of Maui.) Each county denied the Foundation's requests under the NVRA.

**COUNT I**
**Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)**
**Denial of Access**

27.     The Foundation realleges the preceding paragraphs as if fully stated

herein.

28.     The federal Help America Vote Act requires Defendant Nago to

maintain and administer the statewide Voter File "at the State level." 52 U.S.C. §

21083(a)(1)(A). The statewide Voter File is maintained and administered at the

State level and is otherwise in the possession, custody, and control of Defendant

Nago.

29.     The VRS data, or the voter registration list described in HRS

sections11-11, 11-14, 11-17, 11-97 and HAR section 3-177-160, is a record within

the scope of the NVRA's Public Disclosure Provision., 52 U.S.C. § 20507(i). *See*

*Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 438-442, 446 (D. Md. 2019);

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014); *Pub.*

*Interest Legal Found., Inc. v. Bellows*, No. 1:20-cv-00061-GZS, 2022 U.S. Dist.

LEXIS 38875, at *13-14 (D. Me. Mar. 4, 2022); *Pub. Interest Legal Found. v.*

*Matthews*, No. 20-cv-3190, 2022 U.S. Dist. LEXIS 40640, at *27 (C.D. Ill. Mar. 8,

2022); *Ill. Conservative Union v. Illinois*, No. 20 C 5542, 2021 U.S. Dist. LEXIS

102543, at *5 (N.D. Ill. June 1, 2021); *Bellitto v. Snipes*, No. 16-cv-61474, 2018

U.S. Dist. LEXIS 103617, at *13 (S.D. Fla. Mar. 30, 2018).

30.     The NVRA requires "[e]ach State" to maintain and allow inspection of all records within the Public Disclosure Provision's scope. 52 U.S.C. § 20507(i)(1).

31.     The Public Disclosure Provision thus authorizes and entitles the Foundation to inspect and copy, or otherwise purchase and receive, the voter registration list described in HRS sections 11-11, 11-14, 11-17, 11-97 and HAR section 3-177-160.

32.     Defendant Nago is refusing to make the statewide VRS data available for inspection and reproduction as required by the NVRA.

33.     Hawaii's policy of delegating production of portions of VRS data to county clerks conflicts with and violates the NVRA.

34.     Any Hawaii statute, regulation, practice, or policy that conflicts with, overrides, or burdens the NVRA, a federal statute, is preempted and superseded under the Supremacy Clause and the Elections Clause of the Constitution of the United States.

35.     Hawaii's policy of delegating production of portions of VRS data to county clerks is therefore preempted, invalid, and unenforceable.

**COUNT II**
**Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)\[JH7-27-211]**
**Functional Denial of Access**

36.     The Foundation realleges the preceding paragraphs as if fully stated herein.

37.     Hawaii law requires that a person requesting VRS data described in HRS sections11-11, 11-14, 11-17, 11-97 and HAR section 3-177-160 to have an election or government purpose.

38.     Mr. Nago is enforcing this requirement and is therefore preventing the Foundation from inspecting and copying records that the Foundation is otherwise entitled to inspect and copy under the NVRA.

39.     The Foundation intends to use the requested VRS data for reasons not related to the purposes described in HAR section 3-177-160—namely, research, analysis, law enforcement, education, and commentary.

40.     The Foundation cannot obtain VRS data unless it swears on the relevant form that it will use VRS data for an approved purpose. *See* HAR section 3-177-160(g)

41.     By conditioning the Foundation's federal right to inspect voter list maintenance records on the Foundation's sworn agreement to abide by impermissible state-law use restrictions, Hawaii functionally denies the Foundation access to VRS data. Hawaii's policy in this regard violates and conflicts with the NVRA, a federal law.

42.     Any Hawaii statute, regulation, practice, or policy that conflicts with, overrides, or burdens the NVRA, a federal statute, is preempted and superseded

under the Supremacy Clause and the Elections Clause of the Constitution of the
United States.

43.     HAR section 3-177-160(g), and any related policy of conditioning
access to VRS data, is therefore preempted, invalid, and unenforceable.

## COUNT III
### Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)
### Unlawful Use Restrictions

44.     The Foundation realleges the preceding paragraphs as if fully stated
herein.

45.     Hawaii law requires that a person requesting VRS data described in
HRS sections11-11, 11-14, 11-17, 11-97 and HAR section 3-177-160 to have an
election or government purpose.

46.     Mr. Nago is enforcing this requirement and is therefore preventing the
Foundation from inspecting and copying records that the Foundation is otherwise
entitled to inspect and copy under the NVRA.

47.     The Foundation intends to use the requested VRS data for reasons not
related to the purposes described in HAR section 3-177-160—namely, research,
analysis, law enforcement, education, and commentary.

48.     Specifically, the Foundation intends to use VRS data, *inter alia*, to (1)
to determine whether Hawaii's voter registration records are accurate and current;
(2) determine whether Hawaii and other states are complying with state and federal

14

voter list maintenance laws; and (3), assist Hawaii and other states with voter roll errors and programmatic deficiencies.

49.     By denying the Foundation the ability to use voter list maintenance records for a purpose not prohibited by federal law and for a purpose for which the NVRA was enacted, HRS sections 11-11, 11-14, 11-17, 11-97 and HAR section 3-177-160 conflict with and violate federal law.

50.     Any Hawaii statute, regulation, practice, or policy that conflicts with, overrides, or burdens the NVRA, a federal statute, is preempted and superseded under the Supremacy Clause and the Elections Clause of the Constitution of the United States.

51.     Hawaii's use restrictions found in HRS sections 11-11, 11-14, 11-17, 11-97 and HAR section 3-177-160 are therefore preempted, invalid, and unenforceable.

### *Violation Notice and Injury*

52.     Defendant Nago's refusal to provide the requested VRS data to the Foundation violates the NVRA.

53.     The Foundation provided Defendant—the chief election official of Hawaii—with written notice of the NVRA violation alleged herein, thereby satisfying the NVRA's pre-litigation notice requirement, 52 U.S.C. § 20510(b)(1). *See* Exhibit C.

15

54.     Defendant has not cured his violation of the NVRA within the 90 days permitted by the NVRA. *See* 52 U.S.C. § 20510(b)(2).

55.     Defendant's violation of the NVRA is causing the Foundation to suffer a concrete informational injury because the Foundation does not have records and information to which it is entitled under federal law. *FEC v. Akins*, 524 U.S. 11, 21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute").

56.     This informational injury is causing the Foundation to suffer additional injuries.

57.     By denying the Foundation the ability to obtain the requested VRS data, Defendant Nago is impairing the Foundation's ability to, *inter alia*, (1) determine whether Hawaii's voter registration records are accurate and current; (2) determine whether Hawaii and other states [JH7-27-212]are complying with state and federal voter list maintenance laws; and (3), assist Hawaii and other states with voter roll errors and programmatic deficiencies.

58.     Defendant Nago is also impairing the Foundation's ability to pursue legal action to remedy NVRA violations, where necessary.

59.     Defendant Nago is also impairing the Foundation's ability to educate the public about the state of Hawaii voter rolls and voter list maintenance activities.

60.    Defendant's violation of the NVRA is thus frustrating, impeding, and harming the efforts of the Foundation to carry out its organizational mission.

61.    The Foundation will continue to be injured by the Defendant's violations of the NVRA unless and until the Defendant is enjoined from continuing to violate the law.

62.    The Foundation is a person aggrieved by a violation of the NVRA, as set forth in 52 U.S.C. § 20510(b)(1).

63.    The Foundation intends to request VRS data, or other similar data from Defendant Nago in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

1.    Declaring that Defendant is in violation of Section 8(i) of the NVRA by refusing to allow the Foundation to inspect and copy the requested records;

2.    Declaring that Section 8(i) of the NVRA preempts and supersedes any requirement or restriction in HRS sections11-11, 11-14, 11-17, 11-97 and HAR section 3-177-160, and any other Hawaii statute, regulation, practice or policy that prevents the Foundation from inspecting and copying the requested records or that places restrictions on the use of Hawaii's VRS data or other data;

3.    Ordering Defendant to produce to the Foundation statewide VRS data described in HRS sections 11-11, 11-14, 11-17, 11-97 and HAR section 3-177-160

17

and otherwise ordering Defendant to allow the Foundation to inspect and copy the same information.

4.    Permanently enjoining Defendant from denying requests to inspect similar VRS data in the future;

5.    Ordering the Defendant to pay the Foundation's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c); and,

6.    Granting the Foundation further relief that this Court deems just and proper.

Dated: Honolulu, Hawaii, September 21, 2023.

/s/ *James Hochberg*
James Hochberg, Attorney at Law
A Hawaii limited liability law company
700 Bishop Street, Suite 2100
Honolulu, Hawaii 96831
Tel: (808) 256-7382
jim@jameshochberglaw.com

Noel H. Johnson* (Wisconsin Bar #1068004)
Maureen Riordan (New York Bar # 2058840)
Joseph M. Nixon* (Texas Bar #15244800)
Public Interest Legal Foundation, Inc.
107 S. West Street
Suite 700
Alexandria, Virginia 22314
Tel: (703) 745-5870

Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
mriordan@PublicInterestLegal.org
jnixon@publicinterestlegal.org
*Motion for admission pro hac vice
forthcoming*

*Attorneys for Plaintiff Public Interest Legal
Foundation*

19