UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| PUBLIC INTEREST LEGAL FOUNDATION, INC.,<br><br>              Plaintiff,<br><br>     vs.<br><br>SCOTT T. NAGO, IN HIS OFFICIAL CAPACITY AS THE CHIEF ELECTION OFFICER FOR THE STATE OF HAWAII;<br><br>              Defendant. | CIV. NO. 23-00389 LEK-WRP |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR DISCOVERY UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(D)**

Before the Court are Defendant Scott T. Nago's, in his official capacity as the Chief Election Officer for the State of Hawai`i ("Defendant"), Motion to Dismiss Plaintiff's First Amended Complaint Filed September 22, 2023, ECF NO. 20, or in the Alternative, Motion for Summary Judgment, filed November 28, 2023 ("Motion to Dismiss"), [dkt. no. 35,] and Plaintiff Public Interest Legal Foundation Inc.'s ("Plaintiff") Motion for Discovery Under Federal Rule of Civil Procedure 56(d), filed January 26, 2024 ("Motion for Discovery"), [dkt. no. 41]. Plaintiff filed its memorandum in opposition to the Motion to Dismiss on January 26, 2024, and Defendant filed its reply on February 2, 2024. [Dkt. nos. 42, 44.] On February 2, 2024, Defendant filed its memorandum in opposition to the Motion for

Discovery, and Plaintiff filed its reply to the Motion for
Discovery on March 15, 2024. [Dkt. nos. 45, 49.] These matters
came on for hearing on April 12, 2024 ("4/12 Hearing"). For the
reasons set forth below, Defendant's Motion to Dismiss is hereby
granted in part and denied in part insofar as Counts I, II, and
III are dismissed without prejudice. Further, Plaintiff's Motion
for Discovery is denied.

<u>**BACKGROUND**</u>

The operative pleading is Plaintiff's First Amended
Complaint, filed on September 22, 2023 ("Amended Complaint").
[Dkt. no. 20.] The case concerns Plaintiff's request for voter
data from Defendant – the Chief Election Officer of the State of
Hawai`i ("CEO") – pursuant to the public disclosure provision of
the National Voter Registration Act ("NVRA").

On April 6, 2023, Plaintiff's research director Logan
Churchwell ("Churchwell") emailed Defendant a letter requesting
an opportunity to inspect or receive a copy of the complete
voter registration system data in Hawai`i ("voter data")
containing all voter fields, citing 52 U.S.C. § 20507(i).
[Amended Complaint, Exh. A (letter from Churchwell to Defendant,
dated 4/6/23) ("April 6 Letter").] On May 8, 2023, Defendant's
office responded and directed Churchwell to contact the County
Elections Division. Churchwell replied the same day, asking if
the County Elections Division is the only office that maintains

the records, or if Defendant's office also maintains a master copy. Defendant's office replied again on May 10, 2023, directing Churchwell to contact the County Election Division. [Id., Exh. B (emails between Churchwell and Defendant's office, dated from 4/6/23 to 5/10/23).]

On May 17, 2023, Churchwell wrote Defendant a letter stating Defendant's office's actions violated the NVRA. [Id., Exh. C (letter from Plaintiff to Defendant, dated 5/17/23) ("May 17 Letter").] On June 28, 2023, Defendant's General Counsel, Aaron H. Schulaner ("Schulaner") wrote Churchwell a letter disagreeing with Churchwell's legal interpretation of Defendant's obligations under the NVRA, and again referring Churchwell to the county clerks. [Id., Exh. D (letter from Schulaner to Plaintiff, dated 6/28/23).]

During the week of August 14, 2023, Plaintiff sent representatives to the County of Hawai`i, the County of Kaua`i, and the City and County of Honolulu to personally request a copy of each county's voter data.[1] The counties allegedly denied the requests. [Amended Complaint at ¶ 26.] It is unclear what form these requests took. However, Schulaner states Plaintiff did not submit an "Affidavit on Application for Voter Registration Data" to any of the counties in conjunction with its requests for the

---

[1] Plaintiff did not send a representative to the County of Maui due to the fire disaster. [Amended Complaint at ¶ 26.]

voter file in relation to the visits to the counties during the week of August 14, 2023. [Motion to Dismiss, Declaration of Aaron H. Schulaner ("Schulaner Decl.") at ¶ 8.] Plaintiff admits it did not submit any of these applications to the counties in its briefing and at the 4/12 Hearing. See Motion to Dismiss, Mem. in Opp. at 15 (stating Plaintiff cannot complete the request forms).

On August 22, 2023, Churchwell again responded to Defendant, stating Defendant cannot delegate its duties to county clerks, and that the Hawai`i Administrative Rules do not allow for Plaintiff's intended uses of the voter file data, and inquiring whether their intended uses fall within the "election or government purposes" under Hawai`i law. [Amended Complaint, Exh. E (letter from Churchwell to Defendant, dated 8/22/23) ("August 22 Letter").] On September 1, 2023, Schulaner again referred Churchwell to the county clerks. [Id., Exh. F (letter from Schulaner to Churchwell, dated 9/1/23).] On September 7, 2023, Plaintiff delivered letters to Defendant and each of the county clerks alleging violations of the NVRA. [Schulaner Decl., Exh. 5 (letter dated 9/7/23 from Churchwell to Defendant and the Hawai`i County Clerk regarding NVRA violation); id., Exh. 6 (letter dated 9/7/23 from Churchwell to Defendant and the City and County of Honolulu Clerk regarding NVRA violation); id., Exh. 7 (letter dated 9/7/23 from Churchwell to

4

Defendant and the Kaua`i County Clerk regarding NVRA violation) (collectively "September 7 Letters").]

Plaintiff alleges: Hawaii's policy of delegating production of voter data to county clerks is preempted and constitutes a denial of access in violation of Section 8(i) of the NVRA, Title 52 United States Code Section 20507(i) ("Count I"); [id. at ¶¶ 27-35;] Hawai`i law requiring that a person requesting voter data have an election purpose is a functional denial of access in violation of Section 20507(i), and the purpose requirement in Hawai`i Administrative Rules Section 3-177-160(g) and related policies are preempted ("Count II"); [id. at ¶¶ 36-43;] Hawai`i law requiring that a person requesting voter data have an election purpose is an unlawful use restrictions in violation of Section 20507(i), making Hawai`i Revised Statutes Sections 11-11, 11-14, 11-17, 11-97 and Hawai`i Administrative Rules Section 3-177-160 preempted ("Count III"); [id. at ¶¶ 44-63]. Plaintiff requests: a declaration that Defendant violated Section 8(i) of the NVRA; [id. at pg. 17;] a declaration that Section 8(i) of the NVRA preempts "HRS sections 11-11, 11-14, 11-17, 11-97 and HAR section 3-177-160, and any other Hawaii statute, regulation, practice or policy that prevents [Plaintiff] from inspecting and copying the requested records or that places restrictions on the use of Hawaii's VRS [voter registration system] data or other data"; [id.;] an order

5

directing Defendant to produce the voter data described in "HRS sections 11-11, 11-14, 11-17, 11-97 and HAR section 3-177-160"; [id.;] a permanent injunction enjoining Defendant from denying requests to inspect similar voter data in the future; attorney's fees; and any other appropriate relief, [id. at pg. 18].

Defendant's Motion to Dismiss asks the Court to dismiss the Amended Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7) because: (1) Plaintiff lacks standing; (2) the Amended Complaint fails to state a claim for relief under the NVRA or the Help American Vote Act of 2002 ("HAVA"), Title 52 United States Code Sections 20901-21145; and (3) Plaintiff failed to join the county clerks, who are indispensable parties. [Motion to Dismiss, Mem. in Supp. at 2, 11-21.] Alternatively, Defendant asks the Court to treat the Motion to Dismiss as a motion for summary judgment. [Id. at 2.]

**STANDARD**

**I.   Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes a defendant to move for dismissal of an action for "lack of subject-matter jurisdiction[.]" "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." Robinson v. United States, 586 F.3d 683, 685

6

(9th Cir. 2009) (citation and quotation marks omitted). This district court has stated:

> FRCP 12(b)(1) also requires a district court to dismiss a complaint for lack of subject matter jurisdiction where a plaintiff lacks standing to sue. See Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) (citations omitted) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [FRCP] 12(b)(1)."). When a plaintiff lacks constitutional standing, a suit "is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." City of Oakland v. Lynch, 798 F.3d 1159, 1163 (9th Cir. 2015) (quoting Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004) (quotations omitted)); City of Los Angeles v. County of Kern, 581 F.3d 841, 845 (9th Cir. 2009).
>
> In determining constitutional standing, the trial court has the authority "to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." Maya, 658 F.3d at 1067 (citation and quotations omitted). "For purposes of ruling on a motion to dismiss for want of standing, both trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." Namisnak v. Uber Techs., Inc., 971 F.3d 1088, 1092 (9th Cir. 2020) (internal quotations omitted) (citations omitted).

Ye Jiang v. Zhong Fang, CIVIL NO. 20-00100 JAO-KJM, 2020 WL 6889169, at *1 (D. Hawai`i Nov. 23, 2020) (alterations in Ye Jiang).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039

(9th Cir. 2004) (citation omitted). "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." Leite v. Crane, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation and some internal quotation marks omitted). "A 'factual' attack . . . contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." Id. (citations omitted).

> "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air, 373 F.3d at 1039. The court "need not presume the truthfulness of the plaintiff['s] allegations," White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000), and may "resolve factual disputes concerning the existence of jurisdiction," McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch., Dist. No. 205, 343 F.3d 1036, 1040 (9th Cir. 2003).

Shahim v. United States, Case No. 2:21-cv-02401-ODW(AGR), 2022 WL 1644440, at *2 (C.D. Cal. May 24, 2022) (alteration in Shahim) (footnote omitted).

Here, Defendant attached a declaration and exhibits to the Motion to Dismiss, thereby "convert[ing] the motion to dismiss into a factual motion by presenting affidavits or other

evidence properly brought before the court[.]" <u>See</u> <u>Safe Air for</u> <u>Everyone</u>, 373 F.3d at 1039 (quotation marks and citation omitted). Therefore, the Motion may be properly brought as a Rule 12(b)(1) motion and need not be treated as a summary judgment motion.

## II.   <u>Federal Rule of Civil Procedure 12(b)(7)</u>

Rule 12(b)(7) provides for the dismissal of a case due to a "failure to join a party under Rule 19." "Rule 19 governs compulsory party joinder in federal district courts." <u>E.E.O.C.</u> <u>v. Peabody W. Coal Co.</u>, 400 F.3d 774, 778 (9th Cir. 2005). More specifically, Rule 19 "requires joinder of persons whose absence would preclude the grant of complete relief, or whose absence would impede their ability to protect their interests or would subject any of the parties to the danger of inconsistent obligations." <u>Ritchey v. Rando</u>, CIV. NO. 21-00259 LEK-KJM, 2021 WL 4301481, at *3 (D. Hawai`i Sept. 21, 2021) (quotation marks and citation omitted).

**DISCUSSION**

I.   **Standing**

    A.   **Statutory Standing**[2]

        To bring suit pursuant to the NVRA, Plaintiff must possess statutory standing. "To bring a civil action pursuant to the NVRA, '[a] person who is aggrieved by a violation . . . may provide written notice of the violation to the chief election official of the State involved.'" Pub. Int. Legal Found., Inc. v. Dahlstrom, 673 F. Supp. 3d 1004, 1009 & n.40 (D. Alaska 2023) (alterations in Dahlstrom) (citing 52 U.S.C. § 20510(b)(1)). "Although the use of the term 'may' suggests that notice is permissive rather than mandatory, courts have consistently held that pre-litigation notice is mandatory." Id. at 1009-10 & n.41 (some citations omitted) (citing Nat'l Council of La Raza v. Cegavske, 800 F.3d 1032, 1042-45 (9th Cir. 2015) (analyzing whether plaintiffs provided proper notice to determine if the plaintiffs had statutory standing). "If the violation is not corrected within 90 days after receipt of a notice . . . the aggrieved person may bring a civil action in an appropriate

_____

    [2] The Court may address statutory standing before addressing Article III standing. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 97 n.2 (1998) (noting addressing statutory standing may take priority before Article III standing); ORNC Action v. Bureau of Land Mgmt., 150 F.3d 1132, 1140 (9th Cir. 1998) (citing Steel for the proposition that decision on statutory standing may take priority over Article III standing).

district court for declaratory and injunctive relief with
respect to the violation." Id. at 1010 & n.42 (citing 52 U.S.C.
§ 20510(b)(2)).

Plaintiff sent the April 6 Letter, the May 17 Letter,
the August 22 Letter to Defendant, and the September 7 Letters
to Defendant and each respective county. In the April 6 Letter,
Plaintiff simply requested the voter files, and did not provide
a pre-litigation notice. See Amended Complaint, Exh. A (April 6
Letter) at PageID.88. In the May 17 Letter, Plaintiff gave its
pre-litigation notice of NVRA violations, including (1) the
failure to maintain and provide access to the voter file at the
state level, and (2) the failure to provide access to all voter
file data, even at the county level. See id., Exh. C (May 17
Letter) at 2-3. The May 17 Letter provides pre-litigation notice
of the claims brought by Plaintiff. Compare id. with Amended
Complaint at ¶¶ 27-63. Defendant provides no legal support for
its assertion that the September 7 Letters "reset the clock,"
making it improper to file the lawsuit until December 7, 2023.
See Motion to Dismiss, Mem. in Supp. at 12. The Court is not
aware of any authority supporting Defendant's assertion.

Additionally, Defendant's contention would contravene
the purpose of the NVRA's notice requirement – giving the
Defendant an opportunity to cure before facing litigation. See
Scott v. Schedler, 771 F.3d 831, 836 (5th Cir. 2014) ("[T]he

11

purpose of the notice requirement was to provide states . . . an opportunity to attempt compliance before facing litigation." (citation and internal quotation marks omitted)). Defendant was given notice on May 17, 2023, and the May 17 Letter sufficiently informed Defendant of the allegations against it. Defendant had an opportunity to cure since that time. More than ninety days elapsed between May 17, 2023 and the filing of the complaint. See Plaintiff's Complaint for Declaratory and Injunctive Relief, filed 9/21/23 (dkt. no. 1). Therefore, Plaintiff possesses statutory standing.

     **B.**   **Ripeness**

     In order for the Court to have subject matter jurisdiction over each of the claims, they must be ripe. See Allen v. Wright, 468 U.S. 737, 750 (1984); TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" (citations omitted)). The ripeness doctrine is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Lab'ys v. Gardner, 387 U.S. 136, 148 (1967). Federal courts may not issue advisory opinions, but must adjudicate live cases and controversies pursuant to Article III of the United States Constitution. See U.S. Const. art. III; see

also Thomas v. Anchorage Equal Rts. Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).

"An issue is constitutionally ripe only if it is definite and concrete, not hypothetical or abstract." Flower World, Inc. v. Sacks, 43 F.4th 1224, 1229 (9th Cir. 2022) (citation and internal quotation marks omitted). Courts consider whether a plaintiff faces "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," or whether the threatened injury is "imaginary or speculative." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (citations omitted). Often the ripeness inquiry is similar to the inquiry of whether an injury-in-fact exists, as is the case here. See Thomas, 220 F.3d at 1139.

### 1.   Count I

In Count I, Plaintiff alleges Hawaii's policy of delegating production of voter data to county clerks is preempted and constitutes a denial of access in violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i). [Amended Complaint at ¶¶ 28-35.] Plaintiff argues it has suffered an informational injury from the CEO's failure to disclose the voter data. [Motion to Dismiss, Mem. in Opp. at 9-16.] Plaintiff cites to case law on the information injury doctrine, under which a party may possess standing when the party was denied access to information it had a right to receive. See Fed.

13

Election Comm'n v. Akins, 524 U.S. 11, 21 (1998); Pub. Citizen
v. Dep't of Just., 491 U.S. 440, 449 (1989); Inland Empire
Waterkeeper v. Corona Clay Co., 17 F.4th 825, 833 (9th Cir.
2021). In order to possess standing pursuant to the
informational injury doctrine, a party must also prove
"'downstream consequences' from their alleged informational
injury because an 'asserted informational injury that causes no
adverse effects cannot satisfy Article III.'" Munoz v. PHH
Corp., No. 22-15407, 2023 WL 2202228, at *1 (9th Cir. Feb. 24,
2023) (quoting TransUnion, 594 U.S. at 442, 141 S. Ct. at 2214).

Here, the informational injury doctrine is not
directly applicable, because Plaintiff has yet to be denied
information. Rather, Plaintiff is challenging the entity through
which that information is made available to Plaintiff,
specifically, the CEO's referral of the request to the
respective counties. Regarding Count I, Plaintiff's prospective
injury is not the denial of information, but rather the burden
of requesting voter data from four county clerks, rather than
submitting one request to the CEO.

However, Plaintiff's injury is just that –
prospective. As noted, Plaintiff has not yet requested the data
from the four counties pursuant to the county request forms, as
is required in the State of Hawai`i. See Amended Complaint,
Exh. D (June 28 Letter); Schulaner Decl., Exh. 1 (undated

14

memorandum from the City and County of Honolulu, Office of the City Clerk to individuals and organizations interested in purchasing City and County of Honolulu voter registration data with a form Affidavit on Application for City & County of Honolulu Voter Registration Data ("Honolulu Application")); id., Exh. 2 (undated memorandum from the County of Hawai`i Office of the County Clerk to individuals and organizations interested in purchasing voter registration data with a form Affidavit on Application for Statewide Voter Registration Data ("Hawai`i Application") and relevant Hawai`i Administrative Rules provisions); id., Exh. 3 (County of Kaua`i Office of the County Clerk Application for Voter Registration Data ("Kaua`i Application")); id., Exh. 4 (undated memorandum from the County of Maui Office of the County Clerk to individuals and organizations interested in purchasing voter registration data with a form Affidavit on Application for Voter Registration Data ("Maui Application")); see also Haw. Rev. Stat. §§ 11-11, 11-14, 11-17 (detailing duties of the county clerks); Haw. Admin. R. § 3-177-160(g) (stating that a non-public request for voter information "shall be in a form prescribed and provided by the chief election officer containing[,]" among other things, "(1) A sworn certification by self-subscribing oath setting forth the election or government purpose for which the information is sought; [and] (2) A sworn certification by self-subscribing oath

15

establishing that the information will only be used for election or government purposes").

Because Plaintiff has not submitted the application forms for voter data with any of the counties, Plaintiff has not suffered an injury in fact, and Plaintiff's harm is only speculative. Therefore, Count I is not ripe, and the Court lacks subject matter jurisdiction over Count I. See S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990) (stating "[r]ipeness is determinative of jurisdiction" and noting a claim that is unripe must be dismissed for lack of jurisdiction). Count I must be dismissed on this basis.

### 2.   Counts II and III

In Counts II and III, Plaintiff challenges Hawai`i law relating to disclosure of voting records, and a corresponding Hawai`i regulation that only permits applicants for voter information to have an election or government purpose. [Amended Complaint at ¶¶ 36-63.] Plaintiff alleges it "intends to use the requested VRS data for reasons not related to the purposes described in [Hawai`i Administrative Rule] section 3-177-160 — namely, research, analysis, law enforcement, education, and commentary." [Id. at ¶ 39.] However, as explained above, Plaintiff has not submitted an application for voter data to any county clerk.

Plaintiff alleges that it "cannot obtain VRS data unless it swears on the relevant form that it will use VRS data for an approved purpose," [id. at ¶ 40,] and cites to Section 3-177-160(g). Plaintiff contends that it could not submit the county clerk applications because, if it submitted a non-election purpose on the application, the affiant could be subject to a Class C felony, entailing the possibility of five years in prison and a $10,000 fine. Motion to Dismiss, Mem. in Opp. at 15; see also Schulaner Decl., Exh. 1 (Honolulu Application), Exh. 2 (Hawai`i Application), Exh. 3 (Kaua`i Application), Exh. 4 (Maui Application).

The Court is not persuaded that filling out the application for voter data and submitting it to each respective county would subject Plaintiff to the risk of a felony and a fine. All of the county applications state: "Pursuant to Chapter 19 of the Hawaii Revised Statutes, any person knowingly providing false information may be guilty of a Class C felony, punishable by up to 5 years imprisonment and/or $10,000 fine." [Id., Exh. 1 (Honolulu Application) at PageID.167, Exh. 2 (Hawai`i Application) at PageID.171, Exh. 3 (Kaua`i Application) at PageID.182, Exh. 4 (Maui Application) at PageID.188.] In other words, Plaintiff would only face a penalty by submitting false information on the application. Plaintiff can truthfully detail the purpose it seeks the voter data, and each county can

determine whether to grant or reject the request pursuant to applicable law. See id., Exh. 1 (Honolulu Application) at PageID.166 (providing space for the affiant to outline the election purpose for which it seeks the information), Exh. 2 (Hawai`i Application) at PageID.170 (same), Exh. 3 (Kaua`i Application) at PageID.181 (same), Exh. 4 (Maui Application) at PageID.187 (same).

The Maui Application and the Kaua`i Application require the applicant to swear or affirm that "[u]nder penalty of law, the requested voter registration information will only be used for election or government purposes stated in this affidavit." [Id., Exh. 3 (Kaua`i Application) at PageID.182, Exh. 4 (Maui Application) at PageID.188.] Plaintiff is not subject to a penalty for filling out the Maui and Kaua`i applications. The respective counties will determine whether Plaintiff's stated purposes qualify as either election or government purposes under applicable law. Even if the respective counties determine Plaintiff's purposes are not election or government purposes, Plaintiff is not subject to penalty for listing such purposes on the application.

Plaintiff similarly does not face any potential harm from submitting the Honolulu Application and the Hawai`i Application. The Honolulu and Hawai`i applications both state: "The undersigned fully understands and hereby affirms . . .

18

Under penalty of law that the voter registration data shall be used only for election or governmental purposes and not for any other purposes **unless specifically authorized by law.**" [<u>Id.</u>, Exh. 1 (Honolulu Application) at PageID.167, Exh. 2 (Hawai`i Application) at PageID.171 (emphasis added).] If an applicant's purposes do not qualify as an election or governmental purpose, any other purpose authorized by law is also authorized. Thus, if the NVRA authorizes the purpose, then the application form allows it. Stated differently, even if Plaintiff's purposes are not election or governmental purposes, as Plaintiff contends, if Plaintiff's purposes are authorized by the NVRA as Plaintiff argues, Plaintiff's purposes fall squarely within the scope of the Honolulu Application and the Hawai`i Application.

Finally, Plaintiff has not argued any entity has ever faced a penalty for filling out the applications for voter data, nor directed the Court to any such circumstance.

Simply put, Plaintiff's alleged injury from submitting an application for voter data with any county in the State of Hawai`i is not "definite and concrete," but rather is "hypothetical or abstract." <u>See</u> <u>Flower World, Inc.</u>, 43 F.4th at 1229. Plaintiff has not yet suffered an informational injury, because Plaintiff has not yet been denied the information by the counties. Further, Plaintiff's anticipated injury of facing a penalty for filling out the applications for voter data is, as

19

explained above, neither reasonable nor imminent. The Court
finds Plaintiff does not face a realistic danger of sustaining a
direct injury from filling out the applications for voter data.

Therefore, because Plaintiff has not filled out an
application for voter data with any of the counties, Plaintiff's
claims in Counts II and III are not ripe. Accordingly, Plaintiff
lacks standing to bring Counts II and III. Counts II and III
must be dismissed on this basis.

## II.  <u>Rule 19</u>

Finally, Defendant argues complete relief cannot be
afforded without the counties as parties to the suit, making the
counties indispensable parties, and requiring the Amended
Complaint be dismissed with prejudice. [Motion to Dismiss, Mem.
in Supp. at 20-21.] The Court does not reach this argument,
because it finds that it does not have subject matter
jurisdiction over any of the claims alleged. See <u>Wilbur v.
Locke</u>, 423 F.3d 1101, 1106 (9th Cir. 2005) (determining that
"jurisdictional issues should be decided before reaching the
Rule 19 issue"), *abrogated on other grounds by* <u>Levin v. Com.
Energy, Inc.</u>, 560 U.S. 413 (2010); <u>see also</u> <u>Carroll v. Nakatani</u>,
342 F.3d 934, 945 (9th Cir. 2003) ("Rule 19 protects the
interests of absent parties." (citing 7 Wright, Miller & Kane,
Federal Practice and Procedure: Civil 3d § 1602, 22 (West
2001))). If an action is no longer pendent due to plaintiff's

20

deficient standing, the absent party's interest is not at stake."); Khalaj v. United States, 474 F. Supp. 3d 1029, 1033 (D. Ariz. 2020) ("When a motion to dismiss is based on more than one ground, the court should consider the Rule 12(b)(1) challenge first because the other grounds will become moot if the court lacks subject matter jurisdiction." (citation omitted)).

## III. **Discovery Motion**

Because the Court has considered the Motion to Dismiss under Rule 12(b)(1), and not under the Rule 56 summary judgment standard of Rule 56, Plaintiff's Motion for Discovery is inapplicable, and is DENIED on this basis.

## IV. **Dismissal Without Prejudice**

Because Counts I, II, and III are not yet ripe, the Court dismisses Counts I, II, and III without prejudice. See Ass'n of Am. Med. Colls. v. United States, 217 F.3d 770, 785 (9th Cir. 2000) (affirming the dismissal of an unripe claim but reversing the dismissal with prejudice because events may later progress "to a point where plaintiffs' claims are ripe"). The Amended Complaint is dismissed without prejudice, and Plaintiff is granted leave to amend by **October 28, 2024,** if any of the claims are ripe at that time.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint Filed September 22, 2023, ECF No. 20, or in the Alternative, Motion for Summary Judgment, filed November 28, 2023, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion to Dismiss is GRANTED insofar as Counts I, II and III are DISMISSED. The Motion to Dismiss is DENIED insofar as the dismissal of Counts I, II and III is WITHOUT PREJUDICE. Plaintiff is GRANTED leave to file a second amended complaint by **October 28, 2024**, if any of the claims are ripe at that time. Plaintiff is CAUTIONED that, if it fails to file an amended complaint by **October 28, 2024**, the case will be closed.

Plaintiff's Motion for Discovery Under Federal Rule of Civil Procedure 56(d), filed January 26, 2024, is hereby DENIED.

IT IS SO ORDERED.

DATED HONOLULU, HAWAII, June 28, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**PUBLIC INTEREST LEGAL FOUNDATION, INC. VS. SCOTT T. NAGO, ETC; CV 23-00389 LEK-WRP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR DISCOVERY UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(D)**